UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| WADE SIMPSON, | |
| *Plaintiff*, | Civil Action No. |
| v. | **JURY TRIAL DEMANDED** |
| MELISSA INDEPENDENT SCHOOL DISTRICT, CHRISTOPHER FONTANA, in his individual capacity, and KEITH MURPHY, in his individual capacity, | |
| *Defendants*. | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii

INTRODUCTION ................................................................................................... 1

PARTIES ............................................................................................................... 3

JURISDICTION AND VENUE .................................................................................. 4

FACTUAL ALLEGATIONS ...................................................................................... 5

I.      The Simpson Family Moves to Melissa, Texas ................................................. 5

II.     Mr. Simpson's Advocacy Against Race-Based Discrimination, Harassment
        and Bullying in Melissa ISD ............................................................................ 7

III.    The Criminal Trespass Warning: Melissa ISD Retaliates by Banning
        Mr. Simpson from All Melissa ISD Property and Beyond ................................. 12

IV.     The No-Contact Speech Restriction: Melissa ISD Further Retaliates by
        Eliminating Mr. Simpson's Avenues of Communication ................................... 16

V.      Irreparable and Ongoing Injury to Mr. Simpson's Constitutional Rights ......... 17

VI.     Municipal Liability ....................................................................................... 19

        A.      Criminal Trespass Warning .................................................................. 20

        B.      No-Contact Speech Restriction ............................................................ 22

CAUSES OF ACTION ............................................................................................. 23

DEMAND FOR JURY TRIAL .................................................................................. 30

PRAYER FOR RELIEF ........................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bennett v. Prosper ISD Police Dep't,*
    719 F. Supp. 3d 606 (E.D. Tex. 2022) ............................................................2, 23

*City of Chicago v. Morales,*
    527 U.S. 41 (1999) ...................................................................................................28

*G.M. ex rel. Lopez v. Shelton,*
    595 F. App'x 262 (5th Cir. 2014) .........................................................................19

*Hernandez v. Cremer,*
    913 F.2d 230 (5th. Cir. 1990) ................................................................................29

*Izen v. Catalina,*
    398 F.3d 363 (5th Cir. 2005) .................................................................................29

*Jett v. Dall. Indep. Sch. Dist.,*
    7 F.3d 1241 (5th Cir. 1993) ...................................................................................20

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force,*
    379 F.3d 293 (5th Cir. 2004) .................................................................................20

*Johnson v. United States,*
    576 U.S. 591 (2015) ................................................................................................29

*Pierce v. Society of Sisters,*
    268 U.S. 510 (1925) ................................................................................................27

*Troxel v. Granville,*
    530 U.S. 57 (2000) ..................................................................................................27

*United States v. Clark,*
    582 F.3d 607 (5th Cir. 2009) .................................................................................28

*Wilson v. N. E. Indep. Sch. Dist.,*
    No. 5:14-CV-140-RP, 2015 WL 13716013 (W.D. Tex. Sept. 30, 2015) ............2, 22

**Constitutional Provisions**

U.S. Const. amend. I ............................................................................ *passim*

U.S. Const. amend. XIV ....................................................................... *passim*

**Statutes and Code**

28 U.S.C. § 1331 ...................................................................................................................4

28 U.S.C. § 1343 ...................................................................................................................4

28 U.S.C. § 1391 ...................................................................................................................4

28 U.S.C. § 2201 ...............................................................................................................2, 4

28 U.S.C. § 2202 ...................................................................................................................2

42 U.S.C. § 1983 ............................................................................................................*passim*

42 U.S.C. § 1988 ...............................................................................................................2, 30

Tex. Educ. Code § 37.081 ................................................................................................20, 21

Tex. Educ. Code § 37.105 ................................................................................................14, 15

Tex. Educ. Code § 37.107 ...................................................................................................15

Texas Penal Code § 30.05 ...................................................................................................15

Plaintiff, Wade Simpson ("Plaintiff" or "Mr. Simpson"), by and through his counsel, files this Original Complaint against Defendants, Melissa Independent School District ("Melissa ISD" or "the District"), Christopher Fontana, and Keith Murphy (collectively, "Defendants"), and states:

## INTRODUCTION

1.      The United States Constitution guarantees the right of all parents to direct their children's education and the freedom to speak boldly on matters of education and racial injustice and to summon government to account. These are not mere privileges—they are sacred rights enshrined in law. *See* U.S. Const. amend. I; U.S. Const. amend. XIV.

2.      This is an action for violations of First and Fourteenth Amendment constitutional rights, arising from Defendants' imposition of a criminal trespass warning and a no-contact speech restriction on Plaintiff Wade Simpson designed to intimidate and silence him.

3.      Mr. Simpson is an African American father of six children who attend Melissa ISD, a school district located in a small but rapidly growing and diversifying community north of Dallas. Mr. Simpson took an active role in his children's education. For years, he spoke out on matters of racial equality, demanding that Defendants address the prevalent use of racial slurs like the N-word and race-based bullying and harassment his children experienced and witnessed at school.

4.      But Defendants did not want to hear it. To shut up this parent whose speech they disliked, Defendants weaponized a procedure designed to keep schools safe, imposing a criminal trespass warning on Mr. Simpson that threatens him with arrest and bars him for two years not only from entering or speaking on any District property but also from going *anywhere* the District is represented—an outrageously unlawful threat of arrest beyond District property that leaves little doubt as to their true motive. In further retaliation, Defendants severed Mr. Simpson's written and telephonic communication with his children's educators, relegating him to trade emails with the District's human resources director.

1

5.      As intended, Defendants have instilled fear and gravely injured Mr. Simpson's ability to speak on and engage in matters concerning his children's education. Because of the criminal trespass warning, Mr. Simpson could not attend his child's fifth grade graduation. He cannot participate in parent-teacher conferences, watch his sons' sports events or his daughter's cheerleading performances, or participate in other school events open to parents. He cannot advocate in person against racially disparate treatment affecting his children or attend school board meetings to raise his concerns. He is in exile even in his own community, fearing arrest for merely crossing paths with Melissa ISD events and representatives in a city where the schools are the center of community life. Mr. Simpson can never recover the irreplaceable and finite moments of his children's upbringing and the freedoms Defendants' unjust actions have cost him.

6.      Mr. Simpson seeks preliminary and permanent injunctive relief, declaratory judgment, damages, and fees and costs. *See* 42 U.S.C. §§ 1983, 1988; 28 U.S.C. §§ 2201, 2202. Under well-established law, an unwarranted criminal trespass warning like this one imposes an invalid prior restraint in violation of the First Amendment. *See Bennett v. Prosper ISD Police Dep't*, 719 F. Supp. 3d 606, 616 (E.D. Tex. 2022) (enjoining criminal trespass warning barring father who used profanity from entering school board meetings for 90 days, holding restraint likely unconstitutional); *Wilson v. N. E. Indep. Sch. Dist.*, No. 5:14-CV-140-RP, 2015 WL 13716013, at *6 (W.D. Tex. Sept. 30, 2015) (granting summary judgment to grandparent who assaulted a school administrator and was barred from district for two years, holding criminal trespass warning was unconstitutional). Defendants' imposition of the criminal trespass warning and elimination of Mr. Simpson's ability to communicate with his children's educators further constitutes First Amendment retaliation and violates the substantive protections afforded by the Due Process Clause of the Fourteenth Amendment. The criminal trespass warning is also void for vagueness.

7.      Swift and decisive relief for this father from these constitutional transgressions is not only justified—it is imperative. Indeed, our Constitution compels it.

**PARTIES**

8.      Plaintiff Wade Simpson is an individual who resides in Melissa, Texas, located in Collin County.

9.      Defendant Melissa ISD is a public school district and governmental entity organized under the laws of the State of Texas, with its principal offices at 1904 Cooper St., Melissa, TX, 75454, located in Collin County. Melissa ISD operates K-12 schools and receives federal financial assistance. At all relevant times, Melissa ISD has exercised authority over the Melissa ISD Police Department, including its policies, customs, and practices; District policies, customs, and practices governing attendance, participation, and speech at public and other events and school board meetings and school communications with parents; and the policies, customs, practices, and acts complained of herein.

10.      Defendant Christopher Fontana is the Chief of Police of the Melissa ISD Police Department. He has served in that role since March 18, 2024.[1] He previously served as Assistant Chief Deputy in the Collin County Sheriff's Office. Upon information and belief, Chief Fontana is an individual who resides in McKinney, Texas, located in Collin County, and is a citizen of the State of Texas. Upon information and belief, Chief Fontana is an employee of the Melissa ISD Police Department under the control of Melissa ISD. Chief Fontana issued, maintained, and enforced and continues to maintain and enforce the criminal trespass warning against Mr. Simpson. Chief Fontana ratified, participated in, maintained, and enforced the no-contact speech restriction.

---

[1] Ex. 21, "Melissa ISD Police Department," Melissa ISD, https://www.melissaisd.org/page/police-department.

11.     Defendant Keith Murphy is the Superintendent of Melissa ISD, a position he has held for more than 10 years.[2] He is an employee of Melissa ISD. Upon information and belief, Superintendent Murphy is an individual who resides in Melissa, Texas, located in Collin County, and is a citizen of the State of Texas. At all relevant times, Superintendent Murphy has exercised authority over the Melissa ISD Police Department and has knowledge of, directed, approved, participated in, and/or ratified the policies, customs, practices, and acts complained of herein, including the criminal trespass warning, the no-contact speech restriction, and associated acts.

12.     Defendants are all governmental entities and/or employees acting under color of state law for the purposes of 42 U.S.C. § 1983 and the Fourteenth Amendment.

## JURISDICTION AND VENUE

13.     This is a civil action brought pursuant to 42 U.S.C. § 1983 seeking injunctive and declaratory relief together with monetary damages against Defendants for violations of the First and Fourteenth Amendments of the United States Constitution.

14.     The Court has jurisdiction pursuant to 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal questions; 28 U.S.C. § 1343(a)(3), which authorizes federal courts to hear civil rights cases; and 28 U.S.C. § 2201, the Declaratory Judgment Act.

15.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendants reside in this district and in Texas, and 28 U.S.C. § 1391(b)(2), in that a substantial part of the unconstitutional acts committed against Plaintiff and other events or omissions giving rise to the action occurred in this district.

---

[2] Ex. 22, "Office of the Superintendent," Melissa ISD, https://www.melissaisd.org/page/superintendent.

## FACTUAL ALLEGATIONS

### I.     The Simpson Family Moves to Melissa, Texas

16.     Mr. Simpson is African American and is the biological father of six children who attend Melissa ISD schools. Mr. Simpson is also the past caregiver for his niece, who attended a Melissa ISD school until she graduated in 2022.

17.     In 2021, Mr. Simpson moved his family from Plano to Melissa, Texas, believing it would mean a better life and education for his children.

18.     Melissa, Texas is a small but rapidly growing city located north of Dallas. Once a farming community with around 2,000 residents in 2001, the city now has over 25,000 residents, a population that doubled in recent years and continues to grow.[3] As Melissa has grown, the city has attracted new residents like the Simpsons, and the school district's demographics have shifted. According to Texas Education Agency data, in 2018, just under 9% of Melissa ISD's student body was African American.[4] In 2023, over 14% of the District's student body was African American.[5] Even with these demographic shifts, Melissa ISD still has a higher percentage of white students, 54.3%, compared to the state overall, which has only 25.6%,[6] and 85% of its teachers are white.[7]

---

[3] Ex. 23, Mitchell Parton, *Melissa leaders saw their town's housing boom coming, just not when they thought*, The Dallas Morning News (Oct. 9, 2022), https://www.dallasnews.com/business/real-estate/2022/10/06/melissa-leaders-saw-their-towns-boom-is-coming-just-not-when-they-thought/; Ex. 24, Nick Wooten, *Three Collin County cities top list of nation's fastest-growing communities*, The Dallas Morning News (May 16, 2025), https://www.dallasnews.com/business/real-estate/2025/05/14/three-collin-county-cities-top-list-of-nations-fastest-growing-communities/.

[4] Ex. 25, 2018 Snapshot: Melissa ISD (043908) – Collin County, Texas Education Agency, https://tinyurl.com/39wn5623.

[5] Ex. 26, 2023 Snapshot: Melissa ISD (043908) – Collin County, Texas Education Agency, https://tinyurl.com/3vwb6jvx.

[6] Ex. 27, 2023 Snapshot – Categories: State, https://tinyurl.com/5xenpw7x.

[7] Ex. 26, 2023 Snapshot: Melissa ISD (043908) – Collin County, Texas Education Agency, https://tinyurl.com/3vwb6jvx.

19.     Despite its growth, the city still boasts of its "small town" feel, as well as its excellent schools, national standards sports facilities, and school events and spaces open to the public.[8] Schools remain the heart of the community, where Friday Night Football is an enduring tradition. In 2023, Melissa ISD opened a $35 million football stadium for Melissa High School that seats over 10,000 people, five times larger than the high school's entire student body.[9]

20.     Upon moving to Melissa, Texas, Mr. Simpson invested in a home for his family located down the road from Melissa High School and its storied football stadium. Mr. Simpson's mother and stepfather, the children's grandparents, live with the family.

21.     Mr. Simpson has been an involved and dedicated father to his six children and caregiver to his niece. Prior to being banned from Melissa ISD facilities and events, Mr. Simpson was an active and supportive presence in his children's educational and extracurricular lives. He regularly communicated with his children's teachers and attended meet-the-teacher events, school performances, award ceremonies, and sporting events for his children.

22.     A former college football player himself, Mr. Simpson took pride in training his sons for football, using the publicly available Melissa ISD athletic facilities several times weekly to help them develop their skills and physical fitness. He also regularly attended his daughters' performances and academic presentations.

23.     Mr. Simpson's dedication extended beyond mere attendance. He actively participated in the parent community and contributed to school fundraisers. He would also drop

---

[8] Ex. 28, "Welcome to Melissa!," Melissa Chamber of Commerce, https://www.melissatx.org/about-us/; Ex. 29, Athletic Facilities, Melissa ISD, https://www.melissaisd.org/o/athletics/page/athletic-facilities.

[9] Ex. 30, Fox 4 Staff, Melissa ISD's new $35 million football stadium is getting national attention (Aug. 25, 2023), https://www.fox4news.com/sports/melissa-isds-new-football-stadium-would-make-some-colleges-jealous; Ex. 31, Texas Football Life, Aug. 16, 2023 post, https://x.com/txfblife/status/1691845580899725754.

off and pick up his children from school or extracurricular activities. And he would bring lunch for his children and spend time with them, just as he saw other parents do.

## II.   Mr. Simpson's Advocacy Against Race-Based Discrimination, Harassment and Bullying in Melissa ISD

24.    Since moving his family to Melissa, Mr. Simpson has repeatedly pleaded with school officials—including Defendant Murphy and Defendant Fontana—to address and hold students and teachers accountable for repeated incidents of anti-African American discrimination, harassment, and bullying his children have experienced and witnessed within the District.

25.    For example, on April 2, 2024, Mr. Simpson emailed Defendant Murphy and Melissa ISD Board of Trustee members detailing his concerns about the persistent bullying and harassment his children were experiencing. Ex. 1. Mr. Simpson described how his sons had gotten into fights after being called the N-word and monkeys and how teachers and administrators in some instances ignored the race-based bullying and in other instances sought to normalize it. *Id.*

26.    Mr. Simpson explained:

> Both Principals were aware of the issues about students of color being called these names. One Assistant Principal, Ms. Weaver, during our conversation stated on the phone in front of Principal Williams, that the N word has been made "acceptable" and that she has witnessed African American students call each other this word. I let her know that she was out of bounds for making this comment and there is no excuse for this word to be used. I was highly offended by her racist and ignorant comment. I also let her know to stop assuming that all African Americans are ok with this word.

Ex. 1.

27.    In the April 2, 2024 email, Mr. Simpson reported that administrators had commented that they still have to get used to the fact that Melissa is growing and diversifying. Ex.1. He informed Defendant Murphy and Melissa ISD Board of Trustee members of instances when white teachers berated his daughters and when a principal called to tell him that a white

student told one of his daughters and her African American friends to "go back to the cotton field," but school personnel minimized the incident. *Id.* Mr. Simpson explained that the same daughter was slapped in the face by a white student, and that the principal minimized that incident as well. *Id.* And he shared how a white coach accused another one of his daughters of being racist because she chose to pair up with another African American classmate to work on an assignment. *Id.*

28.    Mr. Simpson further reported:

> These incidents and behavior of students and staff of Melissa ISD has taken a toll of my children, mentally and physically. I'm exhausted from receiving phone calls and having to take off from work due to my daughter being verbally abused by teachers in Melissa ISD or being assaulted by another student. Since my children have been enrolled in Melissa they have been physically assaulted by a teacher, which she openly admitted to doing. They have constantly been called Niggas and Monkeys in front of Melissa ISD staff. I've been contacted over 10 plus times about these types of situations. Nothing is being done about it. I've spoken to members in the Superintendent office and let them know about some of these situations and received nothing.

Ex. 1.

29.    In the April 2, 2024 email, Mr. Simpson stressed that he did not feel his children were safe in Melissa ISD and pleaded with Defendant Murphy and Melissa ISD Board of Trustees members George James, Omar Landrum, Paul Anderson, Dr. Bill Gray, Amy Feagin, Darren Thompson, and Quentin Thomason to take immediate action. Ex. 1. They did not do so.

30.    Mr. Simpson's speech pertained to important matters affecting his children's safety and education. One incident he raised in that email occurred on March 5, 2024, when a white male student slapped Mr. Simpson's eleven-year-old daughter twice in the face during a disagreement on the playground. Since the District and its agents failed to take adequate action, Mr. Simpson pursued a Class C "assault by contact" charge against the male student, the lowest charge level, which the investigating Melissa ISD Police Department officer referred to as having "the same level of severity as receiving a ticket for committing a traffic violation such as speeding." Ex. 2.

31.     A few weeks later, Mr. Simpson was told that at the request of the white male student's parent, Melissa ISD Police Department was reopening its investigation and exploring a higher level, Class A assault countercharge against Mr. Simpson's daughter for pushing away the boy who slapped her because he allegedly fell and scraped his knee. Ex. 3. A Class A juvenile misdemeanor assault charge carries the risk of arrest, detention, and other punishments.

32.     In late April 2024, Mr. Simpson met with Defendant Fontana and expressed his concern that Melissa ISD and its police department were baselessly reopening an investigation and seeking to file a higher level Class A charge against his daughter because he had sought to file a Class C charge against the white student. Mr. Simpson discussed with Defendant Fontana the fact that even a Collin County District Attorney's Office criminal investigator with whom Mr. Simpson had discussed the matter found it odd that Mr. Simpson's daughter would be charged with a higher-level offense than the aggressor. Ex. 4. Defendant Fontana made clear that he did not appreciate that Mr. Simpson had gone around him and raised the matter with outside law enforcement.

33.     In August 2024, Mr. Simpson filed a complaint with the US Department of Education Office for Civil Rights ("OCR"), alleging that the District (1) created a hostile environment by failing to adequately respond to bullying and harassment, (2) racially discriminated against his children by disciplining them more harshly than similarly situated white children, and (3) retaliated against one of his daughters by threatening to file an assault charge against her after Mr. Simpson advocated on her behalf. In December 2024, OCR notified Mr. Simpson and the District that it was opening an investigation into Mr. Simpson's claims. Ex. 5. The OCR investigation into Mr. Simpson's allegations has not been completed.

34.     Mr. Simpson continued voicing his concerns to school officials as well. On March 13, 2025, for instance, Mr. Simpson reported to Defendant Murphy, Defendant Fontana, and the

Melissa High School principal three racially charged incidents, including an incident in which a white student told one of Mr. Simpson's sons that his "entire bloodlines are bitches." Ex. 6. Mr. Simpson reminded them that this was the same student who had poured ketchup on Mr. Simpson's fiancé and one of their daughters while they were sitting at a school football game.[10] *Id.* Mr. Simpson also complained about a white high school teacher bullying one of his daughters in front of the class. *Id.*

35.    In his March 13, 2025 correspondence, Mr. Simpson criticized school officials— including Defendants Murphy and Fontana—for failing to hold students and teachers accountable for racial bullying and racism:

> Its exhausting, there are no deterrents in place to stop these racist incidents, the culture in Melissa is for most of these incidents to be thrown under the rug or for the White teacher or student to only receive the minimal amount of punishment for their behavior and the children of color receive harsh punishment when they are finally exhausted with being mistreated and have to take up for themselves. I've been telling officials in Melissa ISD and their police department that the constant turning a blind eye to these incidents have created a hostile environment specifically for students of color.

Ex. 6.

36.    Less than a month later, on April 3, 2025, Mr. Simpson emailed Defendant Murphy and Defendant Fontana about another situation where one of his daughters was being bullied and harassed by white students and a teacher at the Melissa Sixth Grade Center. Mr. Simpson noted that he had for years called out racist behavior within the District, to no avail:

> Mr. Murphy and Chief Fontana, I have for years complained about the racism and behavior of the White American students toward children of color and specifically you Mr. Murphy have completely ignored it. You have displayed zero empathy for any situations or passed the issue on to someone else who also did nothing about

---

[10] When later discussing this matter with Mr. Simpson, Defendant Fontana commented, "we're talking about ketchup" and described the offense as nothing more than "kids being kids."

> situations that have involved racism towards African American students. You have allowed your staff to be openly racist towards students with no real consequence. This has trickled down and for years I've told you and members of the board about the constant racism of White Students calling Black Students, Niggas and Monkeys sometimes in front of teachers and not one time have you stood against it, responded to my complaints or tried to stop it. Its out of hand, Chief Fontana, I've told you the same thing about the hostile environment for African American Students and you have done nothing to make the environment safe for them, you have also done the same and ignored the issues.

Ex. 7.

37.     Defendant Murphy was none too pleased. He wrote, "As an initial matter, I have never and would never condone discrimination, harassment, or retaliation. I believe in my team to protect students and to investigate all concerns provided in your email." Ex. 8. He then warned, "Personal attacks and defamatory statements are unnecessary and will not be tolerated toward any students or District personnel." *Id.* Defendant Murphy claimed that the District would investigate Mr. Simpson's allegations under Board Policies FFH (LEGAL) and FFH (LOCAL) and provide Mr. Simpson with a written outcome. *Id.* To date, however, Mr. Simpson has not received the results of any District investigation into the April 2025 Melissa Sixth Grade Center incident.

38.     Moreover, it was not until after the school year ended, on June 2, 2025, that Mr. Simpson was told that the District had completed its investigation into the concerns Mr. Simpson raised months earlier in March 2025 about (1) the incident where a white student told Mr. Simpson's son that his "entire bloodlines are bitches," (2) several instances where a white coach bullied and targeted one of his daughters in front of the class, and (3) the dismissive handling of the incident in which a white student poured ketchup on his fiancé and daughter at a school football game. The high school principal who led the investigation at Defendant Murphy's direction and approval concluded that there was "no evidence" discrimination occurred. Ex. 9.

39.     The District reached a similar conclusion when it purported to investigate another

incident Mr. Simpson raised on August 5, 2025, Ex. 10, after a white coach (the same coach who bullied one of Mr. Simpson's daughters) told Mr. Simpson's son and other African American students that if they continued to play around he would make them do as many push-ups as the amount of years that slaves were enslaved. Although the District acknowledged that the coach made an "insensitive" and "inappropriate" comment "referencing slavery and punishment," it concluded there was "no evidence" of discrimination or retaliation under District policies.  Ex. 11.

40.    Despite repeated, documented, and admitted instances of inappropriate behavior by teachers and students, the District has minimized, ignored, and sought to brush aside Mr. Simpson's concerns about racism and the resulting hostile environment that exists for African American students and families within the District.

41.    The District has a pattern and practice of ignoring, minimizing, and seeking to brush aside parent concerns. Indeed, the District is notably also facing public scrutiny into other allegations of improper handling of inappropriate teacher-student conduct within Melissa ISD.[11]

## III.    The Criminal Trespass Warning: Melissa ISD Retaliates by Banning Mr. Simpson from All Melissa ISD Property and Beyond

42.    Mr. Simpson's advocacy on behalf of his and other Melissa ISD children—and his refusal to let Defendants ignore his concerns—have resulted in retaliation.

43.    In May 2025, Mr. Simpson's daughter performed in the play *Annie* at Melissa Middle School. The Simpson family attended. While others in the Simpson family were seated closer to the stage, Mr. Simpson and the children's grandparents stood with other parents in the

---

[11] Ex. 32, Adam Fullerton, *Melissa ISD employee fired after 'inappropriate' communication with student,* Fox 4 KDFW, Feb. 15, 2025, https://www.fox4news.com/news/melissa-isd-employee-fired-high-school; Ex. 33, Julia Falcon, *Celina High School teacher, coach placed on leave after allegations of inappropriate conduct at another school district*, CBS News, Nov. 3, 2025, https://www.cbsnews.com/texas/news/celina-high-school-teacher-leave-allegations-inappropriate-conduct/; Ex. 34, Transparency ISD, https://www.facebook.com/transparencyisd.

back of the multipurpose room used as an auditorium. As Mr. Simpson waited for the play to start, Dr. Tommy Shiflett, then Melissa Sixth Grade Center Principal, passed by and smirked at him.

44.    Mr. Simpson had previously spoken out against various incidents of racism and bullying at Dr. Shiflett's school, and Dr. Shiflett had dismissed and failed to address Mr. Simpson's concerns. For example, in January 2025, a Melissa ISD employee reported to Dr. Shiflett, Defendant Fontana, and another District employee that she witnessed a parent cursing at one of Mr. Simpson's daughters in the carpool line. When Mr. Simpson reached out to discuss the incident, Dr. Shiflett at first rebuffed Mr. Simpson, saying "What do you want me to do?" When Mr. Simpson later met with Dr. Shiflett and Defendant Fontana to discuss the incident, Dr. Shiflett appeared unconcerned and did not positively engage with Mr. Simpson.

45.    When Dr. Shiflett walked by and smirked while at the play, Mr. Simpson attempted to ignore him. But after Dr. Shiflett continued to antagonize him, Mr. Simpson walked over and told Dr. Shiflett to "leave me the fuck alone." The two men went their separate ways, and Mr. Simpson and his family went on to watch the entire play without incident. At no point did anyone, including the on-campus officer, ask Mr. Simpson to leave the premises or tell him he was acting in a disorderly fashion or that his behavior was inappropriate.

46.    The following day, Defendant Fontana called Mr. Simpson to Melissa High School and issued him a criminal trespass warning.

47.    When Mr. Simpson asked why he was receiving the criminal trespass warning, Defendant Fontana cited Mr. Simpson's use of profanity when speaking to Dr. Shiflett the prior day, also noting that Mr. Simpson is "a big guy."

48.    The criminal trespass warning informs Mr. Simpson that he is subject to "criminal trespass charges" if he returns to **Melissa Middle School, Melissa Sixth Grade Center, Melissa**

13

**High School, Sumeer Elementary School, and "[a]ny property under the control of Melissa ISD, gyms, facilities, and public events, both away and at home, where Melissa ISD is represented."** The criminal trespass warning is effective for **two years**, "unless withdrawn by Melissa Independent School District." Ex. 12.

49.    The criminal trespass warning includes no exceptions.

50.    The face of the criminal trespass warning purports to rely upon Texas Education Code § 37.105, under which "(a) A school administrator, school resource officer, or school district peace officer of a school district may refuse to allow a person to enter on or may eject a person from property under the district's control if the person refuses to leave peaceably on request and:

(1) the person poses a substantial risk of harm to any person; or

(2) the person behaves in a manner that is inappropriate for a school setting and:

(A) the administrator, resource officer, or peace officer issues a verbal warning to the person that the person's behavior is inappropriate and may result in the person's refusal of entry or ejection; and

(B) the person persists in that behavior."

Tex. Educ. Code § 37.105(a).

51.    The provision further requires that "(d) At the time a person is refused entry to or ejected from a school district's property under this section, the district shall provide to the person written information explaining the appeal process established under Subsection (h)." *Id.*(d). In turn, sub-section (h) provides that "The commissioner shall adopt rules to implement this section, including rules establishing a process for a person to appeal to the board of trustees of the school district the decision under Subsection (a) to refuse the person's entry to or eject the person from the district's property." *Id.* (h).

52.     The authorizing Texas Education Code provision limits the power to refuse entry to "property under the district's control." Tex. Educ. Code § 37.105(a).

53.     Indicative of the warning's pretextual and retaliatory nature, Defendants did not comply with the requirements of the authorizing statute before issuing Mr. Simpson a criminal trespass warning. Nor does the criminal trespass warning issued to Mr. Simpson itself comply with the statute: it threatens Mr. Simpson with arrest if he appears on property that is not the district's property at all, but rather at any event *anywhere* on earth, if Melissa ISD "is represented." Ex. 12.

54.     Violation of a criminal trespass warning may result in criminal prosecution pursuant to Texas Education Code § 37.107 (a Class C misdemeanor, with up to a $500 fine) or Texas Penal Code § 30.05 (a Class B or A misdemeanor, with a fine, jail time, or both).

55.     Perplexed by the criminal trespass warning's purported scope, Mr. Simpson turned to the Collin County Sheriff's Office, only to learn that Defendant Fontana had already spoken with them. The deputies would not answer if Mr. Simpson would be arrested for attending off-campus events, saying it would be left to officer discretion and, at Defendant Fontana's directive, they referred him back to the District's Human Resources Director, Julie Nally. Mr. Simpson reached out to Ms. Nally regarding the criminal trespass warning's scope. Ex. 13. Months passed.

56.     On November 13, 2025, Ms. Nally finally replied, confirming the dystopian threat of arrest if Mr. Simpson appears anywhere on earth Melissa ISD is present, including "all Melissa ISD events, whether those are on-campus events or off-campus events/travel events." Ex. 14.

57.     Defendants' punitive acts against Mr. Simpson, purportedly triggered by the use of profanity, stand in stark contrast to Defendants' leniency in the face of repeated acts of anti-African American discrimination, bullying, and harassment, including use of the N-Word. Selective enforcement further underscores the criminal trespass warning's pretextual and retaliatory nature.

## IV.     The No-Contact Speech Restriction: Melissa ISD Further Retaliates by Eliminating Mr. Simpson's Avenues of Communication

58.     As explained above, over the summer break, the Melissa High School principal notified Mr. Simpson that the District had finished its investigation into Mr. Simpson's complaints of discrimination against two of his children and found that there was no evidence of racial discrimination. Ex. 9. Two weeks later, on June 16, 2025, Mr. Simpson sent a detailed rebuttal to the principal, Defendants Fontana and Murphy, and Melissa ISD Board of Trustee members, stressing that the District had "ignored concerns of racism" and Defendants Fontana and Murphy had "shown a pattern of ignoring incidents of abusive behavior towards students of color," and re-urging his complaints and demand for results of the April 2025 incident investigation. Ex. 15.

59.     Three weeks later, on July 7, 2025, Ms. Nally emailed Mr. Simpson on behalf of the District, explaining that Defendant Murphy had shared Mr. Simpson's communications with her and that she would be Mr. Simpson's "point of contact for any issues relating to your children." Ex. 16. She added that "campus administrators will forward all communications to me" and that "any issues related to the alleged civil rights violations, your grievance, or legal issues should go through legal counsel as both parties are represented by legal counsel." *Id.* She also admitted that that District was well aware of his communications regarding racial discrimination and harassment and requests for information. *Id.*

60.     On October 6, 2025, Ms. Nally even admitted that the restriction was placed by the District in response to Mr. Simpson's complaints about ongoing race-based discrimination, harassment, and retaliation: "In an effort to ensure effective and efficient communication, ***as well as the ability to address Mr. Simpson's continued concerns about ongoing discrimination, harassment, and retaliation***, the District felt streamlining communication would be the best course of action." Ex. 17.

61.     Practically speaking, this restriction cut off Mr. Simpson's direct access to principals, teachers, or investigators at the campuses where incidents involving his children are occurring. Repeatedly, Ms. Nally has failed to communicate about or respond to Mr. Simpson's outreach on educational and even emergency matters, foreclosing all avenues of Mr. Simpson's communication with his children's schools and hindering his educational decision-making.

## V.    Irreparable and Ongoing Injury to Mr. Simpson's Constitutional Rights

62.     As Defendants intended, Mr. Simpson has suffered and continues to suffer ongoing harms. Defendants and their unconstitutional restrictions have injured Mr. Simpson's ability to speak and engage in his children's education and extracurricular activities and advocate against racial injustice. Mr. Simpson has missed a graduation, football and basketball games, awards ceremonies, plays, and meet-the-teacher events. He cannot take his children to or pick them up from school, even if they are sick or another family member is unavailable to help. He cannot bring them medicine or an asthma pump. He can no longer use school facilities to help train his sons in football or attend his daughters' performances. Nor can he attend or speak at school board meetings, parent-teacher conferences, or other forums open to parents or the community.[12] As Defendant Fontana put it, Mr. Simpson can "stand out on the street," but that's about it.

63.     The ban has not only affected Mr. Simpson's ability to observe and support his children in their routine school activities but has also harmed his ability to advocate on their behalf. As just one example, in August, the District informed Mr. Simpson that it wanted to interview his son regarding Mr. Simpson's complaint that a white Melissa High School coach told his son and

---

[12] *See* Ex. 35, Melissa ISD Board of Trustees Operating Procedures 2025-2026, at 8 (describing procedures for public participation at school board meetings), https://tinyurl.com/ye2afh7e; Ex. 36, Melissa ISD School Board Meeting Schedule; Ex. 37, Melissa ISD Homecoming Parade Brochure, Ex. 38, Melissa Madness Basketball Kick-Off Event Flyer; Ex. 39, Melissa ISD Events; Ex. 40, Christmas Band Concerts Flyer.

his African American friends that the coach would make them do as many pushups as years slaves were enslaved. After Mr. Simpson offered dates to bring his son in for the interview, Ms. Nally stated that they would conduct the interview during school hours, without Mr. Simpson present.

64.    When Mr. Simpson objected to the District interviewing his son without his parents present, Ms. Nally responded that the District would allow a singular exception to the criminal trespass warning to permit Mr. Simpson to accompany his son for the interview; however, Mr. Simpson was limited to "only attending in an observational capacity" and would not be allowed to provide any feedback, comments, or answers. Ex. 18. If he did so, "then the meeting will be ended and/or rescheduled for a time where [his son] is present on the campus." *Id.* In other words, Mr. Simpson could show up, but he could not speak.

65.    Mr. Simpson explained that his children do not feel safe in the District and that he was upset that he was being asked to sit silently and unable to fully support his child. The District concluded the "investigation" without interviewing the victim, Mr. Simpson's son, or considering the incident's impact on the child, and decided there was no evidence of discrimination.[13] Ex. 11.

66.    Because of Defendants' unconstitutional acts, Mr. Simpson fears going to places in Melissa, Texas—and even beyond its borders. Mr. Simpson has feared going to the grocery store and visiting other Melissa businesses because Melissa ISD may be holding a fundraiser or other event there.[14] Mr. Simpson has feared crossing paths with and avoided parades near his house where Melissa ISD is represented. Mr. Simpson planned to attend a basketball tournament in

---

[13] The coach is no longer employed by the District. The District refuses to state whether his employment ended because of or in connection with alleged racial discrimination or harassment.

[14] For example, a Walmart recently opened in Melissa, Texas, with a three-day grand opening event including guest appearances by Troy Aikman and others. Mr. Simpson could not attend because the Melissa High School Band performed there as well. Ex. 41, Walmart Grand Opening Flyer; Ex. 42, Melissa Schools Walmart Social Media Post.

Dallas, Texas where his cousins were playing, but learned that a Melissa ISD team was attending, so he did not go. Mr. Simpson went to the public sports complex near his house to run but then remembered that Melissa ISD practices there and has since avoided it.

67.    Mr. Simpson has feared arrest when he goes out in public in Melissa, Texas and sees Melissa ISD represented at events or in banners and logos in public spaces and on businesses. For example, the public sports complex, which has a partnership with Melissa ISD, displays a Melissa School banner:



68.    As a result of the restrictions Defendants imposed on him, Mr. Simpson feels like a prisoner in his own community. Each passing day compounds these harms.

## VI.    Municipal Liability

69.    "In order to state a claim for municipal liability under . . . § 1983 against a school district in Texas, a plaintiff must provide proof of (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose 'moving force' is the policy or custom." *G.M. ex rel. Lopez v. Shelton*, 595 F. App'x 262, 265 (5th Cir. 2014) (quoting *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)).

70.    Whether an official had final policymaking authority is a question of state law, and "Texas law is clear that final policymaking authority in an independent school district . . . rests

with the district's board of trustees." *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993).

71.     The Fifth Circuit has defined a policy as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004) (quoting *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992)).

### A.     Criminal Trespass Warning

72.     Upon information and belief, Melissa ISD and/or its Police Department has previously issued and has a practice and custom of issuing criminal trespass warnings to parents.

73.     Under Texas law, "[t]he board of trustees of the school district shall determine the law enforcement duties of peace officers, school resource officers, and security personnel. The duties must be included in:

> (1) the district improvement plan under Section 11.252;

> (2) the student code of conduct adopted under Section 37.001;

> (3) any memorandum of understanding providing for a school resource officer; and

> (4) any other campus or district document describing the role of peace officers, school resource officers, or security personnel in the district.

Tex. Educ. Code § 37.081(d).

74.     Melissa ISD's District Improvement Plan states that "The Police Chief will be responsible for maintaining and enforcing municipal, county, and state ordinances and laws, as

well as policies, directives, and standards of the Superintendent and the School Board. The Chief will develop, implement and manage the overall plan and program for police operations in the District and coordinate the daily operations of the police department to provide a safe environment for students and staff." Ex. 19.[15]

75.    The Melissa ISD Student Code of Conduct states that "The board utilizes MISD police officers to ensure the security and protection of students, staff, and property. In accordance with law, the board has coordinated with the CBC and other district employees to ensure appropriate law enforcement duties are assigned to these persons. Provisions addressing the various types of security personnel can be found in the CKE policy series." Ex. 20.[16]

76.    The Melissa ISD Student Code of Conduct further provides, "The law enforcement duties of district police officers are: to be on constant patrol of the campus, preventing crime, preserving peace, and protecting life and property by enforcing Texas state law and Board of Trustee rules and regulations." *Id.*

77.    According to the Melissa ISD Police Department website, "Melissa ISD Officers work for the district that commissions them. Under the Education Code of the State of Texas, school district police officers are supervised by the Chief of Police of the school district. This matter falls under 37.081 of the Texas Education Code. The Police Chief answers to the Superintendent or his/her designee." Ex. 21.[17]

78.    Melissa ISD Police Department and Defendant Fontana's practice of issuing

---

[15] Ex. 19 Melissa Independent School District, District Improvement Plan, 2024-2025 Performance Objectives, at 7, https://tinyurl.com/ycxv9s6u.

[16] Ex. 20 Melissa ISD Student Code of Conduct 2025-2026, at 4, https://tinyurl.com/3jbxsvjk.

[17] Ex. 21, "Melissa ISD Police Department," https://www.melissaisd.org/page/police-department.

criminal trespass warnings constitutes a persistent practice that is so common and well settled as to constitute a custom.

79.     The ability of the Melissa ISD Police Department and Defendant Fontana to issue criminal trespass warnings stems from the board statements or policies—the Student Code of Conduct, the CKE board policies, and the District Improvement Plan—promulgated or adopted by Melissa ISD's ultimate policymaker, the Melissa ISD Board of Trustees. Issuance of the criminal trespass warning is an implementation of District policy. *See Wilson*, 2015 WL 13716013, at *8.

80.     Issuing the criminal trespass warning violated Mr. Simpson's First and Fourteenth Amendment rights.

81.     The District knowingly, including by its Board of Trustees, Superintendent, Chief of Police, and other agents, directed, authorized, approved, ratified, implemented, and/or maintained the criminal trespass warning. Further, on October 17, 2025, Defendants and Board of Trustees received notice of the criminal trespass warning, its illegality, and a demand to rescind it within ten days. With deliberate indifference, Defendants and Board of Trustees chose not to respond or rescind the criminal trespass warning, further ratifying the decision to maintain it.

**B.     No-Contact Speech Restriction**

82.     Melissa ISD Board of Trustees is the ultimate policymaker with respect to District policy, custom, and practice regarding parent communication and involvement. Melissa ISD has a policy, custom, and practice of deciding when and by what avenues parents may communicate. Upon information and belief, Melissa ISD, by and through its agents, has a practice of ignoring, restricting, and/or eliminating parent communication and retaliating for exercise of free speech.

83.     The District knowingly, including through its agents and employees, directed, authorized, approved, ratified, implemented, and/or maintained the no-contact speech restriction.

84.     With deliberate indifference, District policymakers or those with delegated

policymaking authority implemented and maintained the no-contact speech restriction, repeatedly foreclosing Mr. Simpson's educational decision-making ability and avenues of communication for Mr. Simpson with his children's schools, on matters of the education of his children and racial discrimination, in violation of Mr. Simpson's First and Fourteenth Amendment rights.

## CAUSES OF ACTION

### COUNT ONE
### FIRST AMENDMENT – PRIOR RESTRAINT

85.    Plaintiff re-alleges and incorporates all preceding paragraphs in this Complaint.

86.    Prior restraints on speech are presumptively invalid. *See Bennett v. Prosper ISD Police Dep't*, 719 F. Supp. 3d 606, 615 (E.D. Tex. 2022) (collecting cases). "The Fifth Circuit has routinely applied this clear principle to hold such prior restraints unconstitutional, including in the school setting." *Id.*

87.    The criminal trespass warning issued by Defendants is an unlawful prior restraint on Plaintiff's protected speech. The criminal trespass warning bars Plaintiff for two years from entering, and therefore speaking at all, at Melissa Middle School, Melissa Sixth Grade Center, Melissa High School, Sumeer Elementary School, and "[a]ny property under the control of Melissa ISD, gyms, facilities, and public events, both away and at home where Melissa ISD is represented."

88.    Plaintiff has engaged and seeks to engage in constitutionally protected speech, including petitioning government actors and speaking on matters of private and public concern. Plaintiff has engaged and seeks to engage in speech on matters affecting the education of his and other children. Plaintiff has advocated and seeks to advocate against racial discrimination, harassment, and bullying of African American students, and for student safety.

89.    The criminal trespass warning bars *any* expression on District grounds, such that the free speech at issue in this case broadly encompasses all expression protected under the First

23

Amendment. The criminal trespass warning entirely prohibits the utterance of speech by Plaintiff at all District public forums, including but not limited to school board meetings, parent-teacher conferences, campus meetings with administrators, parent meetings, events, and forums, and other events open to the public or designated for parents.

90.    There is no compelling, legitimate, or rational purpose for the criminal trespass warning at issue. Defendants have failed to narrowly tailor, or engage in any tailoring of, the criminal trespass warning to achieve any legitimate purpose. The criminal trespass warning is not the least restrictive means or a reasonable means to accomplish a permissible government purpose. The criminal trespass warning does not leave alternative channels for communication for Plaintiff and is an irrational and unreasonable restriction on Plaintiff's constitutionally protected speech.

91.    Defendants' conduct and the criminal trespass warning have interfered with, impaired, and chilled Plaintiff's constitutionally protected First Amendment right to free speech.

92.    Defendants deprived, and are continuing to deprive, Plaintiff of well-established rights, including those secured to him by the First Amendment, as applied to the States and their political subdivisions under the Fourteenth Amendment to the United States and 42 U.S.C. § 1983. In light of clearly established law, a reasonable person would have known that such conduct violated Plaintiff's constitutional rights. In depriving Plaintiff of these rights, Defendants acted under color of state law. This deprivation under color of state law is actionable under and redressable by 42 U.S.C. § 1983.

93.    Defendants Fontana and Murphy were motivated by evil intent and/or demonstrated recklessness and deliberate indifference toward Plaintiff's constitutional rights. They each had subjective consciousness of a risk of injury or illegality and of a substantial risk of serious harm to Plaintiff's constitutional rights and were indifferent to the harm and their civil obligations.

94.    Evidence of their ill motive, recklessness, and deliberate indifference includes, but is not limited to: issuing a criminal trespass warning against Plaintiff and doing so pretextually, deliberately issuing a criminal trespass warning that exceeds the authorizing statute, threatening Mr. Simpson with charges for appearing at "public events, both away and at home where Melissa ISD is represented"; and knowingly and intentionally stating to Plaintiff that the criminal trespass warning includes non-Melissa ISD property ("the criminal trespass does include all Melissa ISD events, whether those are on-campus events or off-campus events/travel events") despite knowing that Defendants lack legal authority to eject Plaintiff from non-Melissa ISD property.

95.    Defendants' violation of Plaintiff's rights has caused, is causing, and will continue to cause Plaintiff to suffer immediate and irreparable harm, including the loss of his constitutional rights, and damages. Plaintiff has no adequate remedy at law to correct this continuing deprivation.

## COUNT TWO
## FIRST AMENDMENT – RETALIATION

96.    Plaintiff re-alleges and incorporates all preceding paragraphs in this Complaint.

97.    Plaintiff engaged in speech protected by the First Amendment, including speaking on matters of private and public concern and petitioning government actors. Plaintiff engaged in speech on matters affecting the education of his and other children and advocated against racial discrimination, harassment, and bullying of African American students, and for student safety.

98.    Defendants retaliated against Plaintiff for his exercise of his First Amendment rights to free speech and to petition governmental actors, including Defendants.

99.    Defendants' retaliatory acts include, but are not limited to: issuing a criminal trespass warning against Plaintiff, and doing so on pretextual grounds; deliberately issuing a criminal trespass warning that exceeds the authorizing statute; threatening Mr. Simpson with criminal trespass charges for appearing at "public events, both away and at home where Melissa

ISD is represented"; knowingly and intentionally stating to Plaintiff that the criminal trespass warning includes non-Melissa ISD property ("the criminal trespass does include all Melissa ISD events, whether those are on-campus events or off-campus events/travel events") despite knowing that Defendants lack legal authority to eject Plaintiff from non-Melissa ISD property; and putting in place a no-contact restriction that prevents Plaintiff from communicating with District teachers, principals, staff, and school administrators.

100.    Defendants willfully acted to interfere and have in fact interfered with Plaintiff's ability to speak on matters of public and private concern, including educational matters and race discrimination, harassment, and bullying, and to petition government actors.

101.    Defendants' adverse actions were substantially motivated by Plaintiff's exercise of constitutionally protected activity.

102.    Defendants' conduct and the criminal trespass warning have interfered with, impaired, and chilled Plaintiff's constitutionally protected First Amendment right to free speech and other constitutional rights. Defendants' actions have caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that protected activity.

103.    Plaintiff fears the omnipresent threat of criminal charges and arrest when he goes and speaks in his own city and elsewhere if Melissa ISD happens to be represented or appear.

104.    Defendants deprived, and are continuing to deprive, Plaintiff of well-established rights, including those secured to him by the First Amendment, as applied to the States and their political subdivisions under the Fourteenth Amendment to the United States and 42 U.S.C. § 1983. In light of clearly established law, a reasonable person would have known that such conduct violated Plaintiff's constitutional rights. In depriving Plaintiff of these rights, Defendants acted under color of state law. This deprivation under color of state law is actionable under and

redressable by 42 U.S.C. § 1983.

105.    Defendants Fontana and Murphy were motivated by evil intent and/or demonstrated recklessness and deliberate indifference toward Plaintiff's constitutional rights. They each had subjective consciousness of a risk of injury or illegality and of a substantial risk of serious harm to Plaintiff's constitutional rights and were indifferent to the harm and their civil obligations.

106.    Defendants' violation of Plaintiff's rights has caused, is causing, and will continue to cause Plaintiff to suffer immediate and irreparable harm, including the loss of his constitutional rights, and damages. Plaintiff has no adequate remedy at law to correct this continuing deprivation.

## COUNT THREE
## FOURTEENTH AMENDMENT – SUBSTANTIVE DUE PROCESS
## RIGHT TO DIRECT CHILDREN'S EDUCATION

107.    Plaintiff re-alleges and incorporates all preceding paragraphs in this Complaint.

108.    The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution protects the right of a parent to direct the education and upbringing of their children, as well as the care, custody, and control of their children. *See Pierce v. Society of Sisters*, 268 U.S. 510 (1925); *Troxel v. Granville*, 530 U.S. 57 (2000).

109.    Defendants have violated and continue to violate Plaintiff's right to make decisions regarding the upbringing and education of his children, as well as their care, custody, and control, in imposing a criminal trespass warning and the no-contact speech restriction. Defendants have repeatedly foreclosed all avenues of communication with Plaintiff's children's schools.

110.    Defendants cannot assert and do not have any compelling, legitimate, or rational interest for disregarding Plaintiff's long-established constitutional right to direct the upbringing and education of his children and their care, custody, and control. Defendants' imposition of the criminal trespass warning and the no-contact speech restriction are not narrowly tailored, tailored, reasonable, or a rational means of achieving any legitimate governmental purpose.

27

111.    Defendants deprived, and are continuing to deprive, Plaintiff of well-established rights, including those secured to him by the Fourteenth Amendment. In light of clearly established law, a reasonable person would have known that such conduct violated Plaintiff's constitutional rights. In depriving Plaintiff of these rights, Defendants acted under color of state law. This deprivation under color of state law is actionable under and redressable by 42 U.S.C. § 1983.

112.    Defendants Fontana and Murphy were motivated by evil intent and/or demonstrated recklessness and deliberate indifference toward Plaintiff's constitutional rights. They each had subjective consciousness of a risk of injury or illegality and of a substantial risk of serious harm to Plaintiff's constitutional rights and were indifferent to the harm and their civil obligations.

113.    Defendants' violation of Plaintiff's rights has caused, is causing, and will continue to cause Plaintiff to suffer immediate and irreparable harm, including the loss of his constitutional rights, and damages. Plaintiff has no adequate remedy at law to correct this continuing deprivation.

## COUNT FOUR
## FOURTEENTH AMENDMENT – VOID FOR VAGUENESS

114.    Plaintiff re-alleges and incorporates all preceding paragraphs in this Complaint.

115.    The criminal trespass warning issued by Defendants "fail[s] to provide" Plaintiff "the kind of notice that will enable" him "to understand what conduct it prohibits" and the criminal trespass warning further "authorize[s] and even encourage[s] arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999).  In each respect, the criminal trespass warning is unconstitutionally vague in violation of the Fourteenth Amendment.

116.    Because the criminal trespass warning fails to adequately advise, notify, or inform Plaintiff, the person subject to possible criminal prosecution for violation, of its requirements, he must "necessarily guess at its meaning." *United States v. Clark,* 582 F.3d 607, 613 (5th Cir. 2009).

117.    The criminal trespass warning fails to provide Plaintiff with fair notice and an

opportunity to comply because Plaintiff cannot determine, nor reasonably anticipate, whether Melissa ISD is "represented" at "gyms, facilities, and public events, both away and at home."

118.    Defendants' later statement about the criminal trespass warning's scope only added further vagueness. Plaintiff cannot workably determine, nor reasonably anticipate, the criminal trespass warning's scope.

119.    The criminal trespass warning is independently void for vagueness because its requirements are "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). The criminal trespass warning contains no standards of any kind to guide law enforcement officers in determining whether Melissa ISD is "represented" at "gyms, facilities, and public events, both away and at home."

120.    Unless declared invalid and enjoined, the criminal trespass warning issued by Defendants will continue to deprive Plaintiff of well-established liberty interests, including the "right to travel," *Hernandez v. Cremer*, 913 F.2d 230, 237 (5th. Cir. 1990), and the right to be free from retaliation for exercise of his First Amendment right to free speech, *Izen v. Catalina*, 398 F.3d 363, 367 n.5 (5th Cir. 2005).

121.    Defendants deprived, and are continuing to deprive, Plaintiff of well-established rights, including those secured to him by the First Amendment and Fourteenth Amendment. In light of clearly established law, a reasonable person would have known that such conduct violated Plaintiff's constitutional rights. In depriving Plaintiff of these rights, Defendants acted under color of state law. This deprivation under color of state law is actionable under and redressable by 42 U.S.C. § 1983.

122.    Defendants Fontana and Murphy were motivated by evil intent and/or demonstrated recklessness and deliberate indifference toward Plaintiff's constitutional rights. They each had

subjective consciousness of a risk of injury or illegality and of a substantial risk of serious harm to Plaintiff's constitutional rights and were indifferent to the harm and their civil obligations.

123.    Defendants' violation of Plaintiff's rights has caused, is causing, and will continue to cause Plaintiff to suffer immediate and irreparable harm, including the loss of his constitutional rights, and damages. Plaintiff has no adequate remedy at law to correct this continuing deprivation. In depriving Plaintiff of these rights, Defendants acted under color of state law. This deprivation under color of state law is actionable under and redressable by 42 U.S.C. § 1983.

124.    Defendants' violation of Plaintiff's rights has caused, is causing, and will continue to cause Plaintiff to suffer immediate and irreparable harm, including the loss of his constitutional rights, and damages. Plaintiff has no adequate remedy at law to correct this continuing deprivation.

## DEMAND FOR JURY TRIAL

125.    Plaintiff demands a trial by jury as to all those issues triable as of right.

## PRAYER FOR RELIEF

126.    Plaintiff requests the following relief from the Court:

a.    An order adjudging and declaring that Defendants violated Plaintiff's First and Fourteenth Amendment constitutional rights and that the criminal trespass warning and no-contact speech restriction issued against Mr. Simpson are unconstitutional and unlawful;

b.    A preliminary and permanent injunction barring Defendants from enforcing the criminal trespass warning and the no-contact speech restriction;

c.    An order for an award of compensatory damages;

d.    An award for punitive damages against the individual Defendants;

e.    An order for pre-judgment and post-judgment interest;

f.    An award of Plaintiff's attorney fees and costs pursuant to 42 U.S.C. § 1988; and

g.    An order for all such other relief the Court deems further necessary and proper or otherwise equitable and just.

Respectfully submitted,

_____

Laranda Walker
Texas Bar No. 24089943
lwalker@susmangodfrey.com
Elizabeth Hadaway
Texas Bar No. 24109962
ehadaway@susmangodfrey.com
Tyler Alabanza-Behard
Texas Bar No. 24136695
talabanza-behard@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Deborah Fowler*
Texas Bar No. 24038899
dfowler@texasappleseed.org
Andrew R. Hairston*
Texas Bar No. 24126958
ahairston@texasappleseed.org
Renuka Rege*
Texas Bar No. 24140854
rrege@texasappleseed.org
Princess Jefferson*
Texas Bar No. 24143674
pjefferson@texasappleseed.org
Crystal Tran*
Texas Bar No. 24144127
ctran@texasappleseed.org
**TEXAS APPLESEED**
1609 Shoal Creek Blvd # 201
Austin, TX 78701
Telephone: (512) 473-2800
Facsimile: (512) 473-2813

*Counsel for Plaintiff Wade Simpson*

**pro hac vice* applications forthcoming

31